## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH JAMES BURKE,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:22-CV-00052** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WARDEN OF** | : | |
| **FCI-SCHUYLKILL,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

<u>Pro se</u> Petitioner Joseph James Burke ("Petitioner") is a federal prisoner in the custody of the United States Bureau of Prisons ("BOP") and is currently incarcerated at Federal Correctional Institution Schuylkill in Minersville, Pennsylvania.  (Doc. No. 1-1.)  He has commenced the above-captioned action by filing a petition for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"), challenging the BOP's computation of his federal sentence.  (<u>Id.</u>)  Because Petitioner failed to exhaust his administrative remedies before petitioning for a writ of habeas corpus pursuant to Section 2241, his petition will be dismissed.

## I.     INTRODUCTION

On June 9, 1988, Petitioner was arrested in the United States District Court for the Middle District of Florida ("Florida Case").  (Doc. No. 7-2 ¶ 4.)  On October 28, 1988, he was sentenced to five (5) years and three (3) months each for counts two (2) and six (6) to be served concurrently, and twenty-five (25) years each for

counts one (1), three (3), four (4), and five (5) to run concurrently with each other and consecutive to counts two (2) and six (6) for armed bank robbery, a violation of 18 U.S.C. § 2113(a), (d).  (Id.; id. at 5-6.)

On February 4, 1993, Petitioner satisfied his five (5) years and three (3) month term of confinement on counts two (2) and six (6) and began serving his consecutive twenty-five (25) year term of confinement on counts one (1), three (3), four (4), and five (5).  (Id. ¶ 5; id. at 10.)  On October 1, 2001, Petitioner was released on parole. (Id. ¶ 5; id. at 13.)

On November 29, 1994, while serving his sentence in the Florida Case for the armed bank robbery, Petitioner was sentenced in the United States District Court for the District of Massachusetts for conspiracy to possess cocaine with the intent to distribute, a violation of 21 U.S.C. § 846 ("Massachusetts I Case").  (Id. ¶ 6; id. at 14-17.)  Petitioner was sentenced to one-hundred and twenty (120) months on count one (1) to run consecutive to the sentence he was serving for the Florida Case, with sixty (60) months of supervised release to follow.  (Id. ¶ 6; id. at 15-16.)

On October 1, 2001, upon Petitioner's release on parole in the Florida Case, he began serving his one-hundred and twenty (120) month sentence for his Massachusetts I Case.  (Id. ¶ 7; id. at 19.)  On October 13, 2010, Petitioner satisfied that term and was released.  (Id.)

On July 30, 2012, Petitioner's supervision in the Massachusetts I Case was revoked, and he was sentenced to a term of eight (8) months with thirty-six (36) months of supervised release to follow.  (Id. ¶ 8; id. at 20-24.)  Thereafter, on December 18, 2012, Petitioner was released from his revocation term in the Massachusetts I Case, and he was committed on a parole violation in the Florida Case.  (Id. ¶ 9; id. at 26.)  On April 18, 2013, Petitioner was released on parole in the Florida Case.  (Id. ¶ 9; id. at 27-32.)

On September 19, 2013, Petitioner's term of supervision in the Massachusetts I Case was revoked again, and he was sentenced to a term of one year and one day with no supervision to follow.  (Id. ¶ 10; id. at 34-36.)  Petitioner satisfied that term of confinement, and, on July 18, 2014, he was committed on a parole violation for the Florida Case.  (Id. ¶ 10; id. at 39-40.)  On December 31, 2014, Petitioner was released on parole in the Florida Case.  (Id. ¶ 10; id. at 42.)

On October 9, 2015, Petitioner was arrested and charged in the United States District Court for the District of Massachusetts with travel and use of interstate commerce facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1958(a) ("Massachusetts II Case").  (Id. ¶ 11; id. at 48-53.)  Petitioner was sentenced to a ninety (90) month term of confinement with two (2) years of supervised release to follow.  (Id. ¶ 11; id. at 49-50.)

3

On February 27, 2022, Petitioner was released on the Massachusetts II Case via good time credit.  (<u>Id.</u> ¶ 12; <u>id.</u> at 55.)  On that same date, however, based upon a parole warrant issued on October 19, 2015, Petitioner was committed on a parole violation for the Florida Case.  (<u>Id.</u> ¶ 12 (explaining that Petitioner was being held pending a violation hearing with the United States Parole Commission); <u>id.</u> at 56-61.)  The BOP's inmate locator identifies Petitioner's current release date as March 25, 2024.[1]

On November 11, 2022, the United States District Court for the Middle District of Florida, Jacksonville Division, transferred Petitioner's Section 2241 petition to the United States District Court for the Middle District of Pennsylvania.[2] (Doc. No. 1.)  On January 12, 2022, this Court issued a Thirty (30) Day Administrative Order directing Petitioner to either pay the requisite filing fee or to sign and complete an application to proceed <u>in forma pauperis</u>.  (Doc. No. 3.)  On February 1, 2022, Petitioner paid the filing fee.  (Doc. No. 4.)  Thus, on March 3,

---

[1] The BOP inmate locator is available at the following address: https://www.bop.gov/inmateloc/.

[2]  To be clear, Petitioner filed a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure. (Doc. No. 1-1.) Because, however, Petitioner's motion challenges the BOP's execution of his federal sentence, rather than its validity, the United States District Court for the Middle District of Florida treated his motion as a petition for a writ of habeas corpus brought pursuant to Section 2241. (Doc. No. 1.)  This Court agrees, and also treats Petitioner's motion as a petition brought pursuant to Section 2241.

2022, the Court deemed the petition filed, directed service of the petition on Respondent, and ordered Respondent to file an answer, motion, or other response to the allegations contained in the petition within twenty (20) days.  (Doc. No. 5.)  On March 18, 2022, Respondent filed a response to the petition.  (Doc. No. 7.)  As reflected by the docket, Petitioner has neither filed a reply, nor sought an extension of time to do so.  Thus, the petition is ripe for the Court's resolution.

## II.    DISCUSSION

Generally speaking, Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate who challenges "not the validity but the execution of his sentence."  See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas").  While "the precise meaning of 'execution of the sentence' is hazy[,]" see id. at 242, the United States Court of Appeals for the Third Circuit has defined this phrase to mean "put into effect" or "carry out."  See id. at 243 (citation and internal quotation marks omitted).

As a result, a federal prisoner may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody.  See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990) (finding that a federal inmate's petition is actionable under Section 2241, where the inmate attacks the term of his custody by challenging

the manner in which the BOP is computing his federal sentence). As such, Petitioner's claim that the BOP incorrectly computed his federal sentence is properly brought pursuant to the provisions of Section 2241.

In support of his claim, Petitioner argues that the BOP should have computed his sentence so that he served his twenty-five (25) year sentence under "old law" before his sixty-three (63) month sentence under "new law." (Doc. No. 1-1.) As for relief, he "asks the Court to amend its judgment in [his] case to provide that the 'old law' sentence is to be served first, before the [sixty-three (63) month] 'new law'. . . sentence." (Id. at 1; id. at 2 (arguing that, because the BOP commenced the "new law" sentence first, it resulted in him spending more time in prison, than if the BOP had commenced the "old law" sentence first).)

Respondent, on the other hand, argues that the Court should dismiss the petition based upon two (2), separate grounds. (Doc. No. 7.) The first is that Petitioner has failed to exhaust his administrative remedies (id. at 1-2, 5-8), and the second is that his instant claim—i.e., that the BOP incorrectly computed his federal sentence—is meritless (id. at 2, 8-9).

The Court begins its discussion with what it deems to be the Respondent's threshold argument—that Petitioner failed to exhaust his administrative remedies. While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the United States Court of Appeals for the Third

6

Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241."  See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  See Moscato, 98 F.3d at 761-62 (citations omitted); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served.  See id.(citations omitted); Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished).  "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'"  See Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal prisoner must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. See generally 28 C.F.R. §§ 542.10-542.19. Under these regulations, a prisoner shall first attempt informal resolution of his complaint with staff and, if the prisoner is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. See id. §§ 542.13-542.14. If the prisoner is not satisfied with the Warden's response, the prisoner shall then submit an appeal to the Regional Director, using the appropriate form. See id. § 542.15(a). And, finally, if the prisoner is not satisfied with the Regional Director's response, then the prisoner shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. See id. A prisoner is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. See id. (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Because federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to Section 2241, a prisoner's failure to exhaust will generally preclude federal judicial review, unless the prisoner can show cause for the default and prejudice from the alleged violation of his rights. See Moscato, 98 F.3d at 760-61 (explaining that a

petitioner's failure to satisfy the procedural rules of the BOP's administrative remedy process constitutes a procedural default and thus bars judicial review (citations omitted)); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) (recognizing that "[a] procedural default generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice").  Particularly relevant here, the existence of cause turns on whether a petitioner can show that some objective, external factor impeded his efforts to comply with the BOP's administrative remedy process.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

Here, the record reflects that, while Petitioner has filed various administrative remedies during his confinement, he has not filed an administrative remedy related to the BOP's computation of his federal sentence.  See (Doc. No. 7-1 ¶ 4; id. at 5-18 (containing the "Administrative Remedy Generalized Retrieval" report for Petitioner)).[3]  Thus, because the record reflects that Petitioner has not filed such an administrative remedy, there is no basis upon which the Court could conclude that he properly or fully exhausted his remedies in accordance with the BOP's

---

[3] "The BOP maintains a database known as the SENTRY Inmate Management System ('SENTRY')."  See Torres v. Spaulding, No. 3:22-cv-01701, 2022 WL 17477084, at *2 (M.D. Pa. Dec. 6, 2022).  During "the ordinary course of business, computerized indexes of all formal administrative remedies filed by [BOP] inmates are maintained by the Institution, Regional, and Central Offices."  See id.  SENTRY, in turn, "generates a report titled 'Administrative Remedy Generalized Retrieval[,]' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief."  See id.

administrative remedy process.  Moreover, the Court notes that Petitioner has not filed a reply, or otherwise disputed, Respondent's argument that he failed to exhaust his administrative remedies.

Accordingly, because the record reflects that Petitioner failed to comply with the requirements of the BOP's administrative remedy process, and because Petitioner has not disputed his failure to do so, the Court finds that he has procedurally defaulted his instant habeas claim that the BOP incorrectly computed his federal sentence.  As a result, his procedural default bars judicial review of his Section 2241 petition, unless he can show cause and prejudice.  See Moscato, 98 F.3d at 762; Johnson, 392 F.3d at 563.

As discussed above, the existence of cause turns on whether Petitioner can show that some objective, external factor impeded his efforts to comply with the BOP's administrative remedy process.  See Murray, 477 U.S. at 488.  In the instant matter, however, Petitioner has not argued, much less shown, that some external factor prevented him from complying with that process.[4]  As a result, the Court is barred from reviewing the merits of his Section 2241 petition and, thus, the Court will dismiss his petition. See Moscato, 98 F.3d at 759 (explaining that "[b]ecause [the petitioner] committed a procedural default of his administrative remedies by

_____

[4] Because Petitioner has not shown the existence of cause for his procedural default, the Court need not address the issue of prejudice.

filing an untimely appeal and because he cannot show cause for the default, [the Court of Appeals was] barred from review of the merits of his [Section] 2241 petition").

## III.   CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's Section 2241 petition.  An appropriate Order follows.


Dated: January 5, 2023                        s/ Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                              United States District Judge